```
              IN THE UNITED STATES DISTRICT COURT

                  FOR THE DISTRICT OF HAWAII

LI DANG DING,                    )   CIVIL NO. 11-00070 SOM-BMK
                                 )
           Plaintiff,            )   ORDER GRANTING DEFENDANTS'
                                 )   MOTION FOR SUMMARY JUDGMENT
     vs.                         )
                                 )
DAVID G. GULICK, District        )
Director of United States        )
Citizenship and Immigration      )
Services, Honolulu District      )
Office; UNITED STATES            )
CITIZENSHIP & IMMIGRATION        )
SERVICES,                        )
                                 )
           Defendants.           )
_____  )
```

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

I.      INTRODUCTION.

This is an appeal from a decision by the United States Citizen and Immigration Service ("USCIS") denying Plaintiff Li Dang Ding's application for naturalization. Ding sought naturalization as the spouse of a citizen. Defendants David Gulick, the District Director of USCIS for the Honolulu District Office, and the USCIS seek summary judgment on the ground that Ding cannot establish that she satisfies the requirements that she have lived in marital union with her citizen spouse, George Shioura, for the three years before she applied for naturalization, and that she has good moral character. Because the record establishes that Ding and her husband did not live in

marital union for the period in issue, the court grants Defendants' motion.

II.        STATUTORY FRAMEWORK.

The Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 et seq., grants the Attorney General of the United States the authority to naturalize persons as citizens of the United States.  8 U.S.C. § 1421.  A person seeking naturalization must file an N-400 application and undergo an examination by the USCIS.  See id. §§ 1445, 1446.  The USCIS then makes a determination based on the application and the examination.  If the USCIS denies the application for naturalization, the applicant may request an N-336 hearing before an immigration officer.  Id. § 1447(a).  If, after conducting a hearing, the USCIS continues to deny the application for naturalization, the applicant may seek review in the United States District Court.  Id. § 1421(c).  Ding, a lawful permanent resident of the United States, has petitioned this court for review of the denial of her naturalization application.

Under the INA, to be eligible for naturalization, an applicant must satisfy a residence requirement.  Id. § 1427(a). An applicant seeking naturalization as the spouse of a citizen must have been "living in marital union" with his or her citizen spouse throughout the three years immediately preceding the day the applicant applies for naturalization.  Id. § 1430(a).  The

INA also requires that the applicant have been of "good moral character" for that three-year period.  Id. § 1427(a).

III.     FACTUAL BACKGROUND.

The parties agree on certain facts.  Ding, a citizen of the People's Republic of China, was admitted into the United States on August 12, 1999.  Defs.' Separate Concise Stmt. Facts ("Defs.' Facts") ¶ 1, ECF No. 27; Pl.'s Concise Stat. Facts ("Pl.s' Facts") ¶ 1, ECF No. 33.

On February 4, 2002, Ding married George Shioura, a United States citizen.  Defs.' Fact ¶ 2.  Their marriage certificate lists Anaheim, California, as the place they lived. Defs.' Facts Ex. 1, at 126.  Based on her marriage to Shioura, Ding became a lawful permanent resident of the United States on September 19, 2005.  Defs.' Facts ¶ 4.

In August 2004, Shioura moved to Hawaii to assume a different position with his employer.  Id. ¶ 3; Defs.' Facts Ex. 3 ("Ding Deposition") at 32:20 - 33:1-14, ECF No. 27-1.  At some point, Ding moved to Hawaii with Shioura, but she returned to California in October or November 2005.  Defs.' Facts ¶ 5.

On July 7, 2008, Ding filed an N-400 naturalization application, id. ¶ 10, and, on January 19, 2010, the USCIS conducted a preliminary interview regarding her application.  Id. ¶ 12; Defs.' Facts Ex. 1, at 324.  On March 3, 2010, the USCIS denied Ding's application on two grounds: (1) she was ineligible

3

for naturalization because she did not meet the residence requirement under the INA, and (2) she failed to establish the requisite good moral character given the false testimony she allegedly provided in connection with seeking benefits under the INA. Id. ¶ 20; Defs.' Facts Ex. 1, at 324-35.

On March 13, 2010, Ding appealed the USCIS decision and requested an N-336 hearing. See 8 U.S.C. § 1447(a). The hearing was held on May 26, 2010. Defs.' Facts ¶ 22. On October 6, 2012, Ding's appeal was denied on the grounds cited earlier by the USCIS. Defs.' Facts Ex. 1 at 1696.

Ding seeks review of the denial, claiming that Defendants are misinterpreting 8 C.F.R. § 319.1(b)(1), as well as Ding's responses at her interview and N-336 hearing. Pet. for Review of Denial of Appl. for Naturalization Pursuant to 8 U.S.C. § 1421(c) and Request for De Novo Hearing, Jan. 1, 2011, ECF No. 1 ("Petition for Review"). Defendants now seek summary judgment on the ground that, as matter of law, Ding does not meet the statutory requirements necessary for naturalization on the basis of marriage to a citizen.

IV.     LEGAL STANDARDS.

    A.     Standard of Review.

A district court reviews a USCIS decision de novo. 8 U.S.C. § 1421(c). The court makes its own findings of fact and conclusions of law and, if requested by the applicant, conducts a

de novo hearing.  Id.  "*[T]he district court has the final word* and does not defer to any of the INS's findings or conclusions." United States v. Hovsepian, 359 F.3d 1144, 1162 (9th Cir. 2004) (emphasis in original).

The applicant bears the burden of showing eligibility for citizenship.  Immigration and Naturalization Serv. v. Punsalan, 486 U.S. 875, 886 (1988) ("[I]t has been universally accepted that the burden is on the alien applicant to show his eligibility for citizenship in every respect." (quoting Berenyi v. Dist. Dir., INS, 385 U.S. 630, 637 (1967)).

B.   Summary Judgment Standard.

Summary judgment shall be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A moving party has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment.  Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).

The burden initially falls on the moving party to identify for the court "the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact."  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp. Catrett, 477 U.S. 317, 323 (1986)); accord Miller v. Glenn Miller

5

Prods., Inc., 454 F.3d 975, 987 (9th Cir. 2006). "A fact is material if it could affect the outcome of the suit under the governing substantive law." Miller, 454 F.3d at 987. When the moving party bears the burden of proof at trial, that party must satisfy its burden with respect to the motion for summary judgment by coming forward with affirmative evidence that would entitle it to a directed verdict if the evidence were uncontroverted at trial. Id. (quoting C.A.R. Transp. Brokerage Co., Inc. v. Darden Rest., Inc., 213 F.3d 474, 480 (9th Cir. 2000)). When the nonmoving party bears the burden of proof on one or more issues at trial, the party moving for summary judgment may satisfy its burden with respect to those issues by pointing out to the court an absence of evidence from the nonmoving party. Miller, 454 F.3d at 987.

When the moving party meets its initial burden on a summary judgment motion, "[t]he burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial." Id. The court must not weigh the evidence or determine the truth of the matter but only determine whether there is a genuine issue for trial. See Balint v. Carson City, Nev., 180 F.3d 1047, 1054 (9th Cir. 1999). On a summary judgment motion, "the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that

party's favor." Miller, 454 F.3d at 988 (brackets omitted) (quoting Hunt v. Cromartie, 526 U.S. 541, 552 (1999)).

Summary judgment may also be appropriate when a mixed question of fact and law involves undisputed underlying facts. See EEOC v. UPS, 424 F.3d 1060, 1068 (9th Cir. 2005); Colacurcio v. City of Kent, 163 F.3d 545, 549 (9th Cir. 1998).

V.      ANALYSIS.

   A.   Ding Does Not Establish That She Lived in Marital Union With Her Citizen Spouse Throughout The Three Years Preceding Her Naturalization Application.

Defendants argue that Ding does not meet the statutory residence requirement for citizenship. Generally, to be eligible for naturalization, an applicant must lawfully and continuously live in the United States for the five years prior to the filing of his or her application for naturalization. 8 U.S.C. § 1427(a). Section 1430 allows for expedited naturalization when the applicant is married to a United States citizen. Id. § 1430(a). The applicant must have lived continuously and lawfully in the United States for the three years prior to the filing of his or her application for naturalization, and during that time the applicant must have been "living in marital union" with his or her citizen spouse. Id.; 8 C.F.R. § 319.1(a)(3).

As Ding applied for naturalization on July 7, 2008, she had to have lived in marital union with Shioura from July 7, 2005, until July 7, 2008, to be eligible for expedited

7

naturalization.  Defendants argue that, because Ding and Shioura did not reside together during those three years, they did not live in marital union.  The court agrees with Defendants, rejecting Ding's argument that the "living in marital union" requirement in § 1430 may be satisfied by an applicant who does not reside under the same roof as his or her citizen spouse.

Although Congress has not defined "living in marital union," an INS regulation states that an "applicant lives in marital union with a citizen spouse if the applicant actually resides with his or her current spouse."[1]  8 C.F.R. § 319.1(b)(1).  As recognized by other jurisdictions, the INS's definition is based on a permissible construction of § 1430 and is entitled to great deference under <u>Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.</u>, 467 U.S. 837 (1984).  <u>See</u> <u>United States v. Moses</u>, 94 F.3d 182, 185 (5th Cir. 1996) ("Given that the INS's interpretation of 'living in marital union' is based on a permissible construction of the statute, it is entitled to great deference by this Court." (citing <u>Chevron</u>, 467 U.S. at 844-45 (noting that "considerable weight should be accorded to an executive department's construction of a statutory

---

[1] Under 8 C.F.R. § 319.1(b)(2)(ii)(C), there is an exception to the actual residence requirement when the applicant and spouse live apart because of circumstances beyond their control.  Ding states that Shioura moved to Hawaii for employment reasons, and that Ding moved back to California to undergo fertility treatment, not that this exception applies here.

8

scheme it is entrusted to administer"))); United States v. Mohalla, 545 F. Supp. 2d 1035, 1041 (C.D. Cal. 2008) (same); Lang v. Chertoff, 2008 WL 4542410, at *2 (W.D. Wash. Oct. 9, 2008) ("Because Congress has not defined the phrase 'liv[ing] in marital union,' deference to the agency interpretation is required in this case pursuant to Chevron . . . ([stating] 'a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency.')"). See also United States v. Onabanjo, 351 F.3d 1064, 1067 (11th Cir. 2003) (stating that 8 C.F.R. § 319.1(b)(1) sets forth the "general rule" that an "applicant lives in marital union with a citizen spouse if the applicant actually resides with his or her current spouse").

Although the Ninth Circuit has yet to interpret the words "living in marital union," other courts have read those words as requiring an applicant to have physically resided with his or her citizen spouse. In United States v. Maduno, 40 F.3d 1212, 1216 (11th Cir. 1994), the Eleventh Circuit affirmed a district court's instruction to the jury that "living in marital union" means that "the applicant actually resided with his current spouse for three years prior to the filing of the petition." The Eleventh Circuit based its decision on 8 C.F.R. § 319.1(b)(1), as well as its determination that § 1430 does not include an intent requirement; that a reasonable conclusion could

9

be drawn that a couple resides together if they are living in marital union; and that, although short separations are normal for married couples, the applicant and his wife had lived apart for years. Id. at 1216-17. The Eleventh Circuit also cited the United States District Court for the Southern District of New York's ruling that the words "living in marital union" describe someone who actually resides with one's spouse. Id. (citing In re Petition of Bashan, 530 F. Supp. 115 (S.D.N.Y. 1982)).

       The Fifth Circuit has also construed "living in martial union" as requiring that an applicant actually reside with a citizen spouse. Moses, 94 F.3d at 185. In Moses, the evidence had established that the applicant and his spouse had not lived together for many years and that he was living with another women with whom he had a child. Id. Basing its holding on 8 C.F.R. § 319.1(b)(1) and the Eleventh Circuit's reasoning in Maduno, the Fifth Circuit stated, "The statute requires a marital union, not a marital state. It is clear that 'living in marital union' indicates that the couple live together in a marital state." Id. at 185. Citing both Moses and Maduno, the Central District of California also applied the INS's definition of "living in marital union" and held that an applicant must actually reside with his or her citizen spouse. Mohalla, 545 F. Supp. 2d at 1041.

Ding relies on a single case, In re Olan, 257 F. Supp. 884 (S.D. Cal. 1966), in support of her position that she need not have lived in the same home as Shioura to establish that they lived in marital union. In Olan, the court held that "living in marital union" means "simply living in the status of a valid marriage" and does not require continuous actual residency. Id. at 890. Olan, however, was decided before the issuance of 8 C.F.R. § 319.1(b)(1). See Administrative Naturalization, 56 Fed. Reg. 50475 (Oct. 7, 1991), 1991 WL 198206 (amending 8 C.F.R. § 319.1 to include subsection (b)(1)); see also Lang, 2008 WL 4542410 at *2, n. 2. Ding relies on no case that has interpreted "living in marital union" in light of 8 C.F.R. § 319.1(b)(1) or that applies the Olan court's interpretation of those words. Moreover, the applicant in Olan had lived apart from her husband for only two and a half months, and the court determined that, despite the husband's departure, the home the applicant lived in continued to be the husband's actual residence. Olan, 257 F. Supp. at 888.

In light of 8 C.F.R. § 319.1(b)(1) and the cases discussed above, this court applies the INS's interpretation of "living in marital union" and requires that Ding have actually resided with Shioura during the three years preceding her naturalization application.

Ding did not live with Shioura throughout the three years from July 2005 to July 2008. Ding's own opposition states that Ding and Shioura "were residing in different states." Pl.'s Opp. to Defs.' Mot. for Summary Judgment at 6, Dec. 22, 2011, ECF No. 32. The record establishes that Shioura moved from California to Hawaii in August 2004, Defs.' Facts ¶ 4, and that Ding did not live in Hawaii with Shioura from July 2005 to July 2008. Although it is not clear when Ding moved to Hawaii, there is no dispute that she moved back to California in 2005. In his deposition, Shioura stated that, although he and Ding planned to live in Hawaii together, Ding went back to California and "got stuck there." Defs.' Facts Ex. 2, ECF No. 27-1 ("Shioura Deposition"), at 35:1-6. Ding testified that, from July 2005 to July 2008, when she was not in Hawaii or on vacation with her family, she stayed in California. Ding Deposition at 30:16-21; 32:12-19; 43:2-8. Although Ding went to Hawaii for months at a time, those trips appear to have been visits, as her residence was in California.

Ding bought a home in California with her mother in April 2008. Ding Deposition at 35:21-24. Although Shioura considers that residence a "second home," Shioura Deposition at 67:16-25, there is no evidence that he actually resided there with her. Shioura testified that he went to California only two to three times a year, and that his stays ranged from a week to a

12

few weeks, depending on his work.  Id. at 50:20-25.  These facts satisfy the burden that Defendants, as the movants, have of demonstrating the absence of any genuine issue of material fact as to whether Ding is eligible for naturalization.

The court is not persuaded by Ding's argument that proof that she and Shioura lived in marital union is established by Ding's continuous marriage to Shioura, Ding and Shioura's ownership of property together, the appearance of their names together on accounts and other documents, and their child.  These circumstances do not show that Ding and Shioura actually resided together.  Ding does not present evidence showing that she lived in marital union with Shioura, which Ding, as the applicant, has the burden of establishing.  Failing to establish the existence of a genuine issue of material fact on this point, Ding cannot defeat the present motion.

B.   The Court Does Not Address Ding's Moral Character.

Defendants also argue that summary judgment is warranted because Ding cannot establish that she has the good moral character required for naturalization.  Under 8 U.S.C. § 1427(a), an applicant must be "a person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States."  The applicant must have been a person of good moral character throughout the time the applicant is

required to have been a resident of the United States.  Id. Thus, in addition to living in marital union with Shioura for three years, Ding must show that she was a person of good moral character during those three years.

The court need not address whether Ding shows that she has good moral character.  Because there is no evidence that Ding lived in marital union, Ding is ineligible for naturalization, regardless of whether her moral character is good or bad.  It would be futile for the court to address this issue.

At the hearing on this motion, Ding asked this court to nevertheless address the issue of whether the USCIS had grounds for finding Ding not to be of good moral character.  While acknowledging that the court's determination on that issue would not change her eligibility, Ding requested a favorable ruling in aid of shortening the time she must wait to reapply for naturalization.

At issue is the USCIS's determination that Ding gave false testimony at her preliminary interview on January 19, 2010, for the purpose of obtaining immigration benefits. Defs.' Facts Ex. 1, at 325.  Under the INA, "an applicant cannot be regarded as a person of good moral character if 'during the period for which good moral character is required to be established,' the applicant gave 'false testimony for the purpose of obtaining benefits under this chapter.'"  Bernal v. Immigration and

14

Naturalization Serv., 154 F.3d 1020, 1022 (9th Cir. 1998) (quoting 8 U.S.C. § 1101(f)(6)).  Because the USCIS determined that Ding gave false testimony on January 19, 2010, the period during which Ding must show that she was of good moral character cannot start until after January 19, 2010.

        The record indicates that the USCIS made a credibility determination at Ding's hearing.  Based on the present record, this court can say neither that the USCIS determination was totally lacking in support, nor that Ding met her burden of establishing her good moral character.  To make such a determination, the court would need to hold an evidentiary hearing with respect to that issue.  But regardless of the outcome of that hearing, the court's ultimate ruling would be the same:  Ding's N-400 application was properly denied because she is ineligible for naturalization.  Under 8 U.S.C. § 1421, Ding may request that this court conduct a <u>de novo</u> hearing on her naturalization application, not on issues that will not affect the grant or denial of her application.  As the outcome of an evidentiary hearing in this court on the character issue will not affect the denial of her application, this court is not required to conduct such a hearing and declines to do so.  The date on which Ding may reapply is collateral to the denial of her application and not relevant to the propriety of the denial itself.

VI.       CONCLUSION.

Because Ding and her husband did not live in marital union from July 2005 to July 2008, the USCIS correctly denied Ding's naturalization application.  The USCIS's summary judgment motion is granted, and its ruling is affirmed.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, January 31, 2012.



/s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge

Ding v. Gulick; Civil No. 11-00070 SOM/BMK; ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT